IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : |
| | : Case No. 5:22-CR-00008 |
| GERALD LEONARD DRAKE, | : |
| | : |
| Defendant. | : |
| _____ | : |

## MOTION FOR RECONSIDERATION

Gerald Drake asks this Court to reconsider its denial of pretrial release. Since his prior detention hearing, all firearms—which were acquired legally—were removed from Mr. Drake's home by his son, who lives in Michigan. Moreover, the jail where he is currently housed has stopped meeting his special dietary restrictions. This has forced Mr. Drake to forego his meals and eat only bread, water, and fruit. Mr. Drake has recently broken his dentures, which will require dental work because the jail's dentist is not able to repair them at present. Finally, he learned that his ex-wife and son's mother passed away in her sleep as of October 31, 2022.

Mr. Drake urges this Court to release him under the following conditions and any others the Court deems necessary: Home incarceration, with ankle monitoring if necessary; computer/internet monitoring; removal of social media accounts; removal of firearms from the home (completed voluntarily); surrender of his passport (completed voluntarily); ability to leave home for doctor and attorney visits only upon

approval of probation[1]; and no contact of any kind with the Cedar Creek Battlefield Foundation, including any of its employees, board members, or other representatives.

These conditions—which are some of the most restrictive pretrial conditions the Court could apply—would guarantee the safety of the public by eliminating Mr. Drake's interactions with anyone other than his family, attorney, medical professionals, and closest friends. This Court has already found that Mr. Drake is not a flight risk; moreover, he has no history of violence. For these reasons, he asks this Court to release him on bond.

## BACKGROUND

On October 6, 2022, Gerald Drake—a 63-year-old retiree—was indicted and arrested for conduct that began and ended nearly four years prior. The allegations stem from the planting of an alleged explosive at the Battle of Cedar Creek in October of 2017. Moreover, threatening letters were sent to individuals beginning in September 2017 through December 2018. Mr. Drake was charged in a fifteen-count indictment alleging that he placed the explosive, sent threatening letters, and stalked individuals associated with the Cedar Creek Battlefield Foundation. *See* ECF 5. The alleged explosive was missing an igniter and may have been incapable of detonating.

- **The 2019 search warrant.**

The magistrate court issued a sealed search warrant for Mr. Drake's property on February 8, 2019. *See* 5:19-mj-00009-JCH (W.D.V.A. 2019) at Docket Entry 4. The search warrant was returned as executed by Special Agent Steven Duke on

---

[1] Mr. Drake represents that he is comfortable using DoorDash (an online food delivery application) or relying on close friends for delivery of food and groceries.

February 22, 2019, citing several inventory items that were collected as evidence. *Id.* at Docket Entry 5. No arrest was made in 2019.

On February 11, 2020, the case was unsealed pursuant to the expiration of the sealing order. *Id.* at Docket Entry 6. The very next day, the Washington Post printed a story that stated that the unsealed search warrant "makes the case against Gerald Leonard Drake, a 61-year-old Virginia man who was ousted as a reenactor in 2014 over a dispute involving a member trying to sneak in without paying." https://www.washingtonpost.com/dc-md-va/2020/02/12/civil-war-reenactor-antifa-threats/ (attached hereto as "Exhibit 1."). No arrest was made in the years 2020 or 2021.

In nearly five years preceding the indictment—more than three of which were post-search warrant and after the case was made public—Mr. Drake was not arrested. There is no allegation that he ever contacted anyone from the Cedar Creek Battlefield Foundation during this time, or that he made any statements to anyone indicating any violence against any group or individual. The Cedar Creek Battlefield Foundation has resumed its reenactments since at least 2021 without incident. Moreover, despite extensive domestic and international travel for tourism purposes, Mr. Drake never attempted to relocate or otherwise evade law enforcement.

- **The 2022 Indictment and Arrest.**

On September 14, 2022, Mr. Drake was indicted in the current case. ECF 5,6. An arrest warrant was issued that same day. ECF 7. Mr. Drake was finally arrested on October 6, 2022 and arraigned the next day. *See* ECF 10, 14. The magistrate court denied bond on October 13, 2022. ECF 21. Specifically, the magistrate court noted

that there was no combination of conditions that could reasonably assure Mr. Drake would not be a danger to others, based on the nature of the offenses. ECF 21. While not reflected in its order, the magistrate court found that Mr. Drake was not a flight risk.

- **Changed circumstances since his bond hearing.**

Prior to his arrest, Mr. Drake did not have the opportunity to gather the medical records from his allergy doctor to present to the jail in support of his dietary restrictions, which are due to allergies, acid reflux, and ulcers. As a result, the jail has received medical records from a different provider that do not include his allergies and diet restrictions and is no longer providing him the modified diet that he was initially placed on.[2] Moreover, his dentures have recently broken and the jail dentist has not been able to repair them, further limiting what he can eat.

Mr. Drake's adult son, who acts as his power-of-attorney, has been handling his affairs since the arrest, including traveling to Winchester to remove the firearms from his apartment, and paying rent on his apartment. His son has confirmed that he sold all of Mr. Drake's "modern" firearms; the antique firearms are with him in Michigan.[3] As such, Mr. Drake no longer has access to any firearms.

Finally, Mr. Drake's first wife and his son's mother, passed away on October 31, 2022. Due to the stress associated with her death, as well as Mr. Drake's incarceration, his son is under immense pressure. He is currently handling all of Mr.

---

[2] Counsel is currently working to secure these records from his provider. Mr. Drake has been prescribed a no spice diet.
[3] A receipt for the sold firearms and pictures of the antiques, all sent by Mr. Drake's son in Michigan, are attached as Exhibits 2-4.

Drake's affairs while he is incarcerated, while also grieving his mother's death and facilitating everything that comes along with that. His mother died unexpectedly in her sleep.

## ANALYSIS

### I. Changed circumstances further support Mr. Drake's release.

Changed circumstances support Mr. Drake's release. First, Mr. Drake has voluntarily disposed of his firearms, even though he is still currently allowed to legally possess them. He did so as a show of good faith that he does not intend to act as a threat in any way. He also voluntarily relinquished his passport when he was arrested. Neither of these actions were required of him, or even suggested by the Court. Mr. Drake took these actions on his own to show the Court that he is willing to do whatever is necessary to earn its trust.

Second, Mr. Drake has experienced several medical issues while incarcerated. The jail removed his modified diet, which significantly limits what he can eat. He is currently only able to eat bread, water, and some fruit. In addition, his dentures have recently broken, and the jail has been unable to fix them, which further limits what he can eat. Mr. Drake's trial date will likely be next summer; given his age and the condition of his health, he is likely to have ongoing issues throughout that time. He also has regular doctor visits that he needs to attend and is partially hearing impaired.

Finally, Mr. Drake's first wife and the mother of his son recently passed away suddenly. His son is currently his power-of-attorney; he is handling all of Mr. Drake's affairs, while also tending to his own family and now the sudden death of his mother.

He has already traveled from Michigan to remove Mr. Drake's firearms, retrieve his pet cats, and manages Mr. Drake's finances. This is compounded by the fact that Mr. Drake's arrest was sudden and unexpected; while this is typical of many arrests, the length of time between the conduct (5 years), search warrant (more than three years), and arrest is unusual and placed an unexpected burden on his family.

II. **Mr. Drake's history undermines the government's argument that he is a danger to the public and overcomes the presumption of dangerousness associated with his charges.**

The Bail Reform Act requires the Court to consider the nature and seriousness of the danger to any person or the community that would be posed by Mr. Drake's release. 18 U.S.C. § 3142(g)(4). However, given that Mr. Drake has been in the community since 2017 and 2018 when the offenses are alleged to have occurred and, more significantly, since 2019 when the search warrant was executed, without giving the government or Court any reason to believe is a danger to any person or the community today, there is little, if any, evidence that he poses any danger presently. Further, since the time of his arrest, Mr. Drake has taken the proactive step of having any weapons that he lawfully possessed removed from his home. This change in his circumstances warrants reconsideration of his bail request considering his conduct over the last three years. To upend Mr. Drake's life and health with a long period of pretrial detention—years after the search—goes beyond what is necessary to ensure the safety of the public.

The presumption of dangerousness in this case is rebutted by clear and convincing evidence, namely: 1) Mr. Drake has no history of violence; 2) he is willing to adhere to the most restrictive home incarceration conditions allowable; 3) he has

voluntarily disposed of his firearms; 4) he has voluntarily relinquished his passport; 5) he is 63-years-old and has health conditions, including issues with his hearing; 6) he has been overly compliant with law enforcement since he was searched in 2019, even giving law enforcement the keys to his apartment and contact information for his "cat-sitter" so that his pet cats could be cared for temporarily after his arrest.

The government is entitled to conduct a lengthy investigation, so long as it is within the statute of limitations. However, where the arrest is made *nearly five years* after the alleged conduct and *over three years* after Mr. Drake was searched and the case became public, it strains credulity to suggest that by virtue of indictment he suddenly became an immediate danger to the public. Mr. Drake has no history of violence. Moreover, Mr. Drake has done nothing to suggest that he is a danger to anyone; indeed, if the government felt differently, it would have arrested him years ago.[4]

### III. Mr. Drake is open to the most restrictive form of Home Incarceration available.

Mr. Drake is open to the most restrictive form of home incarceration available. While he has listed conditions that he would be open to, that list is non-exhaustive.

---

[4] In the bond report, the probation officer included an alleged statement from Mr. Drake's brother, Darwin, stating that Mr. Drake is a dangerous person. ECF 18 at 2. The government cited the statement in support of its position. Mr. Drake has been at odds with his brother for years due to property that was gifted to Mr. Drake exclusively by his late mother. He and his brother only recently resumed speaking after many years of estrangement. It appeared that the court did not lend much weight to the statement (Mr. Drake was unable to cross-examine due to his brother's absence); however, to the degree that it was considered, some context is needed. The letter from his mother gifting him the property is attached here as Exhibit 5.

He asks that the Court fashion a set of conditions that would allow him to be released pre-trial.

## CONCLUSION

Mr. Drake asks this Court to reconsider its previous order to denying bond.

Respectfully submitted,

s/ Donald R. Pender
Donald R. Pender, Esq.
N.C. Bar No.: 48004
V.A. Bar No.: 97455
Assistant Federal Public
Defender Office of the Federal
Public Defender 401 E. Market
Street, Ste 106
Charlottesville, VA 22902
Ph. (434) 220-3392
Fax (434) 220-3390
Don_Pender@fd.org

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 1, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record.

                                          s/ Donald R. Pender
                                          Assistant Federal Public Defender