IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GERALD LEONARD DRAKE,<br><br>Defendant. | Criminal No. 5:22-CR-00008 |

**UNITED STATES' RESPONSE
TO DEFENDANT'S MOTION FOR RECONSIDERATION**

### I.   INTRODUCTION

The defendant, Gerald Leonard Drake, has moved for the Court to reconsider its Order of Detention. Mot. for Recons., ECF No. 28 ("Mot. Recons."); *see also* Order of Detention, ECF No. 21 ("Detention Order"). The Court previously found that Drake is charged in the instant case "with serious, violent offenses, including placing a pipe bomb at a public event and making threats to numerous others to kill them and harm their family and children in vile ways" and that no condition or combination of conditions would reasonably assure the safety of the community if the defendant were released. Detention Order at 1.

Drake now asks the Court to revise its decision because his firearms have been removed from his home, his ex-wife has passed away, and he is experiencing dietary and dental difficulties. Mot. Recons. at 1. He represents that he will comply with any conditions the Court might impose. *Id.* But for all the reasons stated by the Court at the initial detention hearing and those appearing below, the Court should deny Drake's most recent attempt to secure bond in this explosives, stalking, and threats case. Drake's conduct threatened serious harm to the general public, those

1

against whom he had personal vendettas, and their families and children. There is no set of release conditions that could ensure the safety of the community. *See* 18 U.S.C. § 3142(e)(1).

## II.   LEGAL STANDARD

When seeking pretrial detention, the government bears the burden to establish that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community" if the defendant is released. 18 U.S.C. § 3142(e), (f). To determine whether detention is warranted, the Court must consider (1) the nature and circumstances of the charged offense; (2) the weight of the evidence; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, and criminal history; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *Id.* § 3142(g). The government must prove dangerousness by clear and convincing evidence and risk of flight by a preponderance of the evidence. *Id.* § 3142(f).

Where, as here, there is probable cause to believe that Drake committed an offense under 18 U.S.C. § 844(i) (malicious use of explosives), it is presumed that no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3), (f)(1). That "presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (internal quotation marks and citation omitted).

A detention hearing may be reopened "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the

2

issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Rules concerning the admissibility of evidence in criminal trials do not apply to detention hearings and the government may present evidence by proffer. *Id.*; *United States v. Williams*, 753 F.2d 329, 331 n.7 (4th Cir. 1985) ("Evidentiary proffers are approved by 18 U.S.C. § 3142(f)."); *see also United States v. Winsor*, 785 F.2d 755 (9th Cir. 1986) (holding that both parties may proceed by proffer and defendant has no right to cross-examine persons not called to testify).

### III. FACTS AND ARGUMENT

This Court has already found that the extreme nature of Drake's conduct establishes that no set of conditions would reasonably assure the safety of the community. Detention Order at 1. Drake seeks reconsideration because his son has removed the firearms from Drake's home, his ex-wife recently passed away, and he is experiencing dietary and medical issues in jail. Mot. Recons. at 1. None of these arguments affects the Court's conclusion that Drake poses a danger to the community.

**A. Drake remains a danger to the community.**

*1. Nature and Circumstances of the Charged Offenses*

Drake is charged with mailing threatening communications, in violation of 18 U.S.C. § 876(c); malicious use of explosives, in violation of 18 U.S.C. § 844(i); unlawful manufacture of a destructive device, in violation of 26 U.S.C. §§ 5841, 5861(f), and 5871; possession of an unregistered destructive device, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871; stalking, in violation of 18 U.S.C. §§ 2261A(2) and 2261(b)(3); use of an explosive to commit, and carrying an explosive during the commission of, a federal felony, in violation of 18 U.S.C. § 844(h)(1) and (h)(2); stalking, in violation of 18 U.S.C. § 2261A(2); four counts of use of mail to threaten injury

3

by means of an explosive, in violation of 18 U.S.C. § 844(e); and four counts of mailing threatening communications, in violation of 18 U.S.C. § 876(c). *See generally* Indictment, ECF No. 5. The crimes with which he is charged carry some of the most serious penalties available in the federal system.

As the Court stated at the initial detention hearing, the nature and circumstances of the charged offenses are alarming. Drake's charged conduct includes manufacturing a pipe bomb and placing it at a public event, making heinous threats to the public and specific individuals, and pretending to be a member of Antifa to sow discord in the wake of the Charlottesville riots. These facts alone provide clear and convincing evidence that no set of release conditions would reasonably assure the safety of the community.

This case arises out of a two-year terror campaign Drake waged against the public, members of the Cedar Creek Battlefield Foundation ("CCBF"), their parents, and their children. More specifically, Drake is charged with constructing a pipe bomb and placing it at a CCBF event attended by children, families, civil war reenactors, volunteers, and merchants. Indictment ¶¶ 6, 35, 38. Thanks to a vendor who noticed the bomb and called police, attendees evacuated the area so that law enforcement could render safe the explosive device. *Id.* ¶¶ 15–16. But it is easy to imagine the potential damage to attendees if the explosive had gone unnoticed and detonated while families and children browsed vendor tents. In the wake of this attempted bombing, Drake sent threat letters to CCBF and newspapers purporting to be from "Antifa" (a term used to describe individuals who adhere to what they consider "anti-fascist beliefs") in an attempt to sow social discord in the aftermath of the August 2017 Unite the Right riots in Charlottesville, Virginia. *Id.* ¶¶ 18–30. In those letters, Drake threatened that he would place another bomb, use a sniper to shoot attendees, and mow people down with a vehicle at the Gettysburg Remembrance Day

Parade. *Id.* ¶ 18. He threatened to use another bomb to kill the CCBF president's mother and remarked that he "like[d] the idea of burning [her] alive." *Id.* ¶ 24. These threats felt so real to the CCBF president that he checked under his mother's car for bombs. Indeed, in the wake of his attempt to bomb an earlier CCBF event, Drake demonstrated time and time again that he was both willing and—given his prior construction of a pipe bomb—able to use explosives to terrorize his victims.

Drake's threats did not stop there. After the CCBF president resigned, he targeted the new acting president. In particular, Drake threatened horrifying sexual violence against the acting president's young daughters. In a letter addressed to the former CCBF president, Drake stated that "if [the new acting president] thinks she is safe, well she is right, but her children or not! . . . [W]e will come after her girls. We have a convicted rapist that would love to introduce them to his penis." Indictment ¶ 28. A few weeks later, Drake sent another letter threatening, "We have a guy that likes to rape . . . . We can send him after [the acting president's] little girls! He would love putting his throbbing cock into her tight virgin pussy and mouths. His cock is so big it would rip those girls wide open!" *Id.* ¶ 30. In addition to these threats against identified children, Drake again expanded his threats to the general public—innocent people he did not know and against whom he had no personal grudge—at the next reenactment event, noting that "[a]ll we need is just one victim to destroy you. One child hurt by a bomb, or anthrax. One child shot by an unseen shooter hiding in the woods." *Id.* ¶ 30.

The nature and circumstances of the charged offenses prove Drake's complete disregard for human life and intent to instill terror in his victims. He targets for specific attention the most vulnerable in our society, finding satisfaction in the notion of children dying terrible deaths. Drake's threats are even more alarming because they followed his construction and placement of

a pipe bomb at a public event. Drake is willing and able to build and use explosives to further his goals. He is a danger to both the general public and specific individuals and that danger cannot be mitigated by any conditions of release.

2. *Weight of the Evidence*

The weight of the evidence also supports detention. This case is the result of an extensive two-year investigation. The evidence collected during that investigation matches Drake to the location, timing, and contents of the nine threatening letters discussed in the Indictment.

For example, several threatening mailings in this case bore an Antifa logo on an envelope or interior letter. Indictment ¶¶ 18–30. During a search of Drake's residence, agents found a thumb drive hanging from a lamp next to Drake's recliner. On that thumb drive, agents found an Antifa logo matching the emblem on the most recent mailings and a software program called "Bleachbit," which is used to delete electronic data from digital devices.

The government's evidence also includes Google and cellular location data showing Drake's whereabouts. This data matches location and timing information for each of the nine threat letters discussed in the Indictment. Data also places Drake in the area of the CCBF vendor tents minutes before the pipe bomb was found and his presence near the vendor tents is further confirmed by witnesses. Finally, the evidence shows that Drake knew and worked among his individual targets, knew their families, and used this knowledge to instill fear by threatening those dearest to them, including their parents and children. The strong evidence in this case therefore supports detention.

3. *History and Characteristics of the Defendant*

Drake's history and characteristics also warrant detention. Drake asserts that he has no history of violence. Mot. Recons. at 6. But Drake's history includes prior convictions that indicate

sexual violence against minors and deceitfulness, violent online posts, and at least one suicide attempt.

As addressed during the initial detention hearing, Drake's criminal history shows a pattern of sexual violence against minors and deceitfulness. His prior sexual offense against a minor is especially concerning in light of the graphic sexual threats to minors in this case. Here, Drake threatened sexual violence against several individuals, describing "a guy who likes to rape" who could "visit your sister" or be sent after the CCBF acting president's "little girls." Indictment ¶ 30. As discussed above, his sexual threats are even more horrifying because they are graphic and specific (regarding both the identities of his targets and what he will do to them). Drake's criminal history also includes charges involving possession of forged currency which, like the Antifa-marked letters in this case, indicate deceitfulness.

In addition to Drake's prior convictions, other characteristics establish that he should not be released. Drake made online posts that discuss killing individuals and show significant animus toward those of different races. Self-reporting raises further concerns about Drake's mental stability and support detention: Drake has attempted suicide on at least one occasion and currently takes medication for depression.

Ultimately, Drake's dangerousness is starkly summarized by his own brother, who describes Drake as "cunning," "violent," "dangerous," and "capable of anything." Drake proffers that he has been at odds with his brother for several years due to a property dispute following the death of their mother. Mot. Recons. at 7 n.4. But he does not argue that any of his brother's statements are unsupported by fact. Drake's willingness to forgo firearms and surrender his passport are insufficient in light of other serious concerns about his history and characteristics.

### 4. Danger to the Community

The danger to the community and specific victims is clear cut. Drake has exhibited an ability and willingness to build and use explosives to further his agenda, threatened heinous violence against the most vulnerable members of society, and attempted to sow unrest by purporting to be an Antifa member. His conduct indicates a willingness to deceive, desire to spread hate, and utter disregard for human life. No set of conditions can reasonably assure that he will not resume his terror campaign if released. The government has easily met its burden to prove dangerousness by clear and convincing evidence.

## B. Drake remains a flight risk.

The government also notes its continued position that detention is warranted because Drake poses a flight risk. Drake himself acknowledges that he is a frequent international traveler. Indeed, he has traveled to Africa, Austria, Poland, Czechia, and Hungary and cumulatively spent several weeks outside the United States in the last nine months. Drake is sixty-three years old, retired, and has little to no close ties to the local community. If convicted, he faces the practical equivalent of a life sentence. He has a history of forging currency and, in this case, using fake logos to assume a false identity. Together, these facts establish that Drake has significant incentives to evade the Court and a willingness to deceive. No set of conditions reasonably assures his appearance if he is released. *See* 18 U.S.C. § 3142(e).

## C. Drake's medical and dietary needs do not affect the Court's dangerousness finding.

In addition to removing firearms from his house, Drake also attempts to support his motion by noting dietary concerns, anticipated health issues, and the death of his ex-wife. Mot. Recons. at 5–6. He argues that he should be released because the jail removed his modified diet, leaving him with only bread, water, and fruit. *Id.* at 5. Drake also asserts that his dentures are broken and

8

the jail has not repaired them. *Id.* And he posits that (although he identifies no current medical issue) he is "likely to have ongoing [health] issues" leading up to trial. *Id.* at 5. Finally, Drake notes that his son is under immense pressure after the death of Drake's ex-wife. *Id.* at 4. The government takes no position on Drake's need for dietary and medical accommodations. But none of these issues affects the Court's prior finding that no conditions could reasonably assure the safety of the community if Drake is released. Instead, Drake should seek relief for dietary and medical issues by asking the Court to order accommodations inside the jail.

## IV.  CONCLUSION

For the reasons stated above, the Court should deny Drake's motion for reconsideration. The government has established that Drake presents a danger to the community that cannot reasonably be mitigated by any conditions of release.

Date: November 15, 2022

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
United States Attorney

*s/Jessica L. Joyce*
Jessica L. Joyce
Special Assistant United States Attorney
Virginia Bar No. 96153

Katie Burroughs Medearis
Assistant United States Attorney
California No. 262539

United States Attorney's Office
255 West Main Street, Room 130
Charlottesville, VA 22902
Tel: 434.293.4283
Jessica.Joyce2@usdoj.gov
Katie.Medearis@usdoj.gov

## CERTIFICATE

I hereby certify that a true and correct copy of the foregoing has been electronically filed with the Clerk by CM/ECF system, which will send notification of such filing to all counsel of record, on this 15th day of November.

s/Jessica L. Joyce