IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GERALD LEONARD DRAKE | CRIM. NO. 5:22-CR-00008 |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America hereby provides its position with respect to sentencing for the defendant, Gerald Leonard Drake. The United States requests that this Court adopt the findings of the Pre-Sentence Investigation Report ("PSR"), accept the plea agreement the parties entered into pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, and sentence the defendant to 120 months.

The § 3553(a) factors support a sentence of 120 months and such sentence is sufficient but not greater than necessary in this case. Such a sentence reflects the nature and circumstances of the defendant's conduct, in which he threatened harm to various individuals and their families. It also takes into account the seriousness of the defendant's conduct, particularly his creation and placement of a pipe bomb onsite during the Cedar Creek Battlefield ("CCB") annual event, thereby putting hundreds of people at risk. A meaningful period of incarceration is also necessary for general deterrence in a case in which the defendant used societal unrest in the wake of the Charlottesville Unite the Right riots to create fear and further divisiveness.

I.  **Factual Background**[1]

Between 2017 and 2018, the defendant, Gerald Drake, mailed letters purporting to be from "Antifa,"[2] threatening harm unless event planners canceled civil war reenactments at the Cedar Creek Battlefield (CCB) in Middletown, Virginia and a Remembrance Day parade in Gettysburg, Pennsylvania. The letters warned of bombings, shootings, and other violence against organizers and attendees for their "celebration of the Civil War" described as an "atrocity of history." Letter recipients included the Cedar Creek Battlefield Foundation ("CCBF") and its board members,[3] the mayor's office in Gettysburg, newspapers in Winchester and Gettysburg, and others.

When the mailed threats were unheeded and the annual CCB reenactment went forward as planned in October 2017, the defendant manufactured and placed a pipe bomb onsite during the event. A vendor found the unexploded pipe bomb within the merchant tents on the battlefield property. Law enforcement responded to the scene to seize the device and render it safe. The participants, vendors, and merchants were evacuated, and the remainder of the battlefield reenactment and associated events were cancelled that weekend.

After the pipe bomb incident, the defendant continued to send threatening letters to CCBF purporting to be from Antifa. One letter, received on June 29, 2018, threatened the mother of the President of the CCBF's Board of Directors, stating, "It looks like you have not heeded our warning to cancel all civil war events…Maybe we should kill your mother for you to stop, a car

---

[1] The Indictment, PSR, and statement of facts adequately set forth the criminal conduct in this case. The information included here is drawn from those documents unless otherwise stated.

[2] "Antifa," short for Anti-Fascist, does not describe a particular group, but rather describes individuals who adhere to what they consider as "anti-fascist beliefs." The term Antifa is often associated with anarchist violent extremists, individuals who, in addition to holding anti-fascist beliefs, are also opposed to capitalism and the current form of the U.S. government and who advocate violence to achieve their goals.

[3] CCBF is a non-profit organization based in Middletown, Virginia dedicated to the preservation of history relating to the Battle of Cedar Creek, a Civil War battle that occurred on October 19, 1864.

bomb would do wonders for her beauty." The letter also detailed the various methods Antifa could "sneak in" destructive devices and weapons despite CCBF's implementation of heightened security after the 2017 reenactment. The letter demanded that CCBF stop the "celebration of slavery" and threatened to poison or shoot participants' children if CCBF did not cancel the event. The defendant concluded the letter by stating, "Call off this event or you will regret it!" The CCB's 2018 reenactment was cancelled as a result.

Despite the cancellation of the 2018 CCB reenactment, the defendant continued to threaten CCBF and its participants. After the President of CCBF resigned as a result of the threatening letters, the defendant sent a letter containing even more violence-filled threats. This time, the defendant threatened Individual C, the new acting president of the CCBF Board of Directors. Still posing as Antifa, the defendant wrote, "[i]f [Individual C] thinks she is safe, well she is right, but her children are not! If she puts together a reenactment to celebrate keeping men in chains, we will come after her girls." He then threatened sexual violence against Individual C's girls by claiming he had "a convicted rapist that would love to introduce them to his penis." In a subsequent letter, the defendant went into even more graphic detail about the rape of Individual C's girls, stating "Mom could always remember that her girls were raped and kidnapped because of her!"

The defendant did not limit his threatening letters to the CCBF and its members. He also sent threatening letters to *The Gettysburg Times* and an individual known as "The Maryland Sutler" in an effort to stop the Gettysburg Remembrance Day Parade in 2017 and 2018. The letters mirrored the ones he sent to CCBF, with the same Antifa markings, and referenced the events that occurred at the 2017 CCB reenactment. For instance, in November 2017, the defendant's letter referenced the pipe bomb placed at the CCB reenactment, calling it a "dud," and stated that Antifa

had a "new person to make [their] bombs." The letters also described violence Antifa would engage in if the Civil War events were not cancelled, such as running spectators over with trucks and shooting them.

II. **Guidelines Calculation**

As the Court is well aware, although the Guidelines are advisory, sentencing courts "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 261 (2005). Thus, at sentencing a court "must first calculate the Guidelines range." *Nelson v. United States*, 555 U.S. 350, 351 (2009). Here, the PSR's advisory Guidelines range is 41 to 51 months. The calculated range includes a base offense level of 18, a two-level enhancement for the use of a destructive device, a four-level enhancement for use or possession of a firearm in connection with another felony offense, a 3-level reduction for acceptance of responsibility, and a Criminal History Category of II.

The government does not object to the Guidelines calculation but given the conduct in this case, both parties have agreed that the appropriate sentencing range is 84 to 120 months. This sentencing range contemplates that the defendant is no longer subject to 18 U.S.C. § 844(h), which carries a mandatory minimum consecutive term of imprisonment of 10 years. This sentencing range is also supported by the 3553(a) factors, particularly the nature and circumstances of this offense.

III. **Section 3553(a) Factors**

As the Court is also well aware, after calculating the Guidelines, a sentencing court must then consider that Guidelines range, as well as the sentencing factors set forth in § 3353(a), and determine a sentence that is appropriate and reasonable for the individual defendant. *Nelson*, 555 U.S. at 351; *see also United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). With respect to

§ 3553(a)'s enumerated factors, of particular pertinence here are the "nature and circumstances of the offense" and the needs for the sentence "to reflect the seriousness of the offense," and to "afford adequate deterrence to criminal conduct." § 3553(a)(1), (a)(2)(A), (a)(2)(B). As explained below, based on those factors, a sentence of 120 months of incarceration is appropriate in this case.

    A. *The defendant's criminal conduct spanned a two-year time frame and threatened not only numerous individuals but an entire community.*

The nature and circumstances of the offense calls for a sentence of 120 months. The defendant engaged in a deliberate and purposeful pattern of criminal behavior. He threatened numerous individuals and their loved ones through his violence-riddled letters and affected an entire community.

In his letters, the defendant threatens "revenge" on the CCBF and its reenactment event. His letters discussed how Antifa will "punish" CCBF and its member for continuing to celebrate "a war to keep men in chains." Through his letters, the defendant detailed violence, such as "firing guns into the camps and at the re-enactors" and warned if CCBF did not cancel the CCB reenactment, "[Antifa] will destroy" them. These are serious and frightening allegations, especially given the rise of gun violence throughout the nation.

After placing the pipe bomb at the 2017 event, the defendant's threatening letters continued and escalated in their threats. He made even more threats against CCBF and its members and demanded that CCBF cancel the 2018 reenactment. In his letters, he continued to discuss ways in which "Antifa" would disrupt the event and injure participants and attendees. The defendant listed ways to sneak in bomb parts and claimed he could terrorize and injure attendees with a "drive by shooting" or a "drone dropping a bomb."

The defendant threatened not only the individuals he stalked through his letters, such as Individual A, he also made vulgar and specific threats against their family members. For instance,

in his June 26, 2018 letter to Individual A, the President of CCBF, the defendant lamented that CCBF had not "heeded" his "warning to cancel all civil war events." The defendant then referenced Individual A's mother, stating, "Maybe we should kill your mother for you to stop, a car bomb would do wonders for her beauty." In multiple letters, the defendant explicitly referenced Individual C's children, stating, "If she puts together a reenactment to celebrate keeping men in chains, we will come after her girls." He details graphic sexual violence including the rape of these girls if CCBF and others do not follow his demands and cancel the reenactment.

The defendant's actions threatened not only individuals and their loved ones, but an entire community. The defendant was a member of that community and used his knowledge and access to CCBF members to prey upon them. For instance, after the defendant planted the pipe bomb at the 2017 reenactment, CCBF began to discuss security measures to put in place to protect the CCB participants and attendees and keep them safe at the 2018 reenactment. The defendant exploited this information by sending a threatening letter in June 2018 mocking the security steps CCBF was taking. For instance, he listed all the ways Antifa could circumvent security and hurt attendees. The defendant wrote, "Don't think metal detectors will help, we have plastic pipe bombs, fuses, fertilizer, or dynamite in a thermos…" The defendant realized the atmosphere of fear he created about the CCB reenactment and exploited it by continuing to threaten violence and attempting to highlight the CCBF's alleged security failures.

Further, the defendant wanted to not only scare the recipients of the letters, but also the general public. This is demonstrated through the defendant mailing copies of some of his letters to newspapers such as *The Winchester Star* and *The Gettysburg Times*. The defendant wanted to publicize his terror-filled threats and put not only the letter recipients, but the entire community on

notice of potential violence if anyone continued to participate or attend the CCB reenactment or the Gettysburg Remembrance Parade.

The defendant's level of detail was calculating and purposeful. He used his personal knowledge of the victims, their families, and the CCBF and Civil War reenactment community to make his threats even more terrifying and to make them appear to be credible. By including facts known only to those associated with CCB and CCBF, the defendant hoped to instill even more fear in his victims.

B. *A lengthy prison sentence reflects the seriousness of the defendant's conduct and the fact that he put hundreds of lives at risk by making and placing a pipe bomb at the 2017 CCB reenactment.*

The defendant not only threatened individuals and their families, but he also put hundreds of lives at risk by manufacturing and placing a pipe bomb at the 2017 CCB reenactment. The pipe bomb was constructed with a metal pipe nipple, metal nuts glued to the pipe nipple, metal end-caps, a 9-volt battery, black and red wires, and a mercury switch. Inside, the bomb contained black powder, Pyrodex,[4] and BBs. A picture of the pipe bomb when it was discovered in the merchant tent is below.



---

[4] There is a typo in the Statement of Facts and Pyrodex is inadvertently misspelled. (ECF 46, ¶ 15).

**Govt.'s Sentencing Memorandum           Page 7 of 10**

The following is a picture of the bomb after it was rendered safe and was analyzed at the FBI Laboratory.



By placing this pipe bomb in a merchant's tent, the defendant placed hundreds of peoples' lives at risk. As detailed in the Declaration of Special Agent Ryan Taylor, black powder and Pyrodex are "extremely dangerous." Govt. Ex. 1, ¶ 8. When these items are confined to a container, as they were here, it creates "a dangerous device that can be initiated with heat, shock, or friction." *Id*. And it does not take much to ignite such a pipe bomb. No blasting cap, or detonator, is necessary. *Id*. at ¶ 6. For instance, if even a single grain of powder is in the threads of the pipe, if the end cap is twisted off, such "metal-on-metal friction" could be "enough to ignite the powder," thereby creating an explosion. *Id*.

Thus, the defendant cannot argue that the bomb was simply a scare tactic, that it was a "dud," or that he did not mean to hurt anyone. The defendant's creation and placement of the pipe bomb at the 2017 CCB reenactment was extremely dangerous and with just a small amount of heat, shock, or friction, he could have caused horrific damage. Because his criminal conduct went beyond a pattern of threat-filled letters and he actually took action, a sentence of 120 months is appropriate in this case.

C. *A sentence of 120 months is necessary for general deterrence and sends a strong message.*

In a time in which tensions are high and violence has increasing become an occurrence in routine American tasks such as attending concerts, movies, and school, it is important to send a strong message to those who would continue to perpetuate fear and violence. A sentence of 120 months demonstrates that the defendant's threats and placement of a pipe bomb are not to be taken lightly.

Further, context is important in this case. The defendant started mailing his letters close in time to the Charlottesville Unite the Right riots. In his messages, the defendant referenced the Charlottesville riots by stating that he would "make Charlottesville look like a Sunday picnic!" The defendant preyed on the societal unrest occurring in the wake of those riots. He framed Antifa as a perpetrator of these offenses, which not only served to shield his identity, but also stoked divisiveness in a particularly divided time. Therefore, a significant prison sentence is important to send a message to others who may try to do the same.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

IV. **Conclusion**

For the reasons stated above, the government requests that the Court impose a sentence of 120 months.

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
UNITED STATES ATTORNEY

*s/Melanie Smith*
MELANIE SMITH
Assistant United States Attorney
Virginia Bar No. 82663
KATIE BURROUGHS MEDEARIS
Criminal Chief
California Bar No. 262539
255 West Main Street, Room 130
Charlottesville, VA 22902
Telephone: (434) 293-3180
Melanie.smith@usdoj.gov