CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED

04/29/2025

LAURA A. AUSTIN, CLERK
BY: /s/ Amy Fansler
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. 5:22-cr-00008 |
| v. | ) | |
| | ) | By:  Elizabeth K. Dillon |
| GERALD LEONARD DRAKE | ) | Chief United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Defendant Gerald Leonard Drake, proceeding pro se, requests that the court "seal his court file[,] specifically his indictment."  (Mot. to Seal, Dkt. No. 70.)  For the reasons set forth below, the motion is denied.

## I.  BACKGROUND

On September 14, 2022, Drake was indicted on fifteen counts in relation to a series of events that occurred between September 2017 through September 2018.[1]  (Indictment, Dkt. No. 5.)  These counts included mailing threatening communications, 18 U.S.C. § 876(c); malicious use of explosives, 18 U.S.C. § 844(i); unlawful manufacture of a destructive device, 26 U.S.C. §§ 5841, 5861(f), 5871; possession of an unregistered destructive device, 26 U.S.C. §§ 5841, 5861(d), 5871; stalking, 18 U.S.C. §§ 2261A(2), 2261(b)(3); use of an explosive to commit, and carrying an explosive during the commission of, a federal felony, 18 U.S.C. §§ 844(h)(1), (h)(2); stalking, 18 U.S.C. § 2261A(2); four counts of using the mail to threaten injury by means of an explosive, 18 U.S.C. § 844(e); and four counts of mailing threatening communications, 18 U.S.C. § 876(c).

On April 17, 2023, Drake pleaded guilty to Counts IV and V of the indictment: possession of an unregistered destructive device, in violation of 26 U.S.C. §§ 5841, 5861(d), 5871, and stalking, in violation of 18 U.S.C. §§ 2261A(2), 2261(b)(3).  (Dkt. No. 45.)  As part of

---

[1] Drake incorrectly states that the indictment contained eleven counts.  (Mot. to Seal.)

his plea, Drake agreed and stipulated to several facts, including the acknowledgement that he

wrote and mailed threatening letters to various individuals, claiming to be Antifa.  (Dkt. No. 46,

3–4.)  These letters contained explicit threats of violence, including bombings, shootings, and

other forms of harm targeting organizers and attendees of Cedar Creek Battlefield Foundation

(CCBF) events.  They also made direct threats to specific individuals, including "the possibility

of killing . . . and committing sexual assault, namely rape, against [a particular person's] family

members."  (*Id.* at 3–4.)  Further, Drake stipulated and agreed that he constructed and placed a

pipe bomb in a merchant tent during the CCB reenactment on October 14, 2017.  (*Id.* at 5.)  On

August 17, 2023, Drake was sentenced to one hundred and eight months (108) of imprisonment

for each of Counts IV and V, to be served concurrently, followed by three (3) years of supervised

release.  (Dkt. No. 56.)

## II.  DISCUSSION

Although Drake's motion is somewhat unclear, it appears that he seeks to seal his entire

criminal case, with particular emphasis on the charges in the indictment to which he did not

plead guilty.  (Mot. to Seal 1 ("Comes now defendant . . . with a motion requesting that the court

seal the defendant[']s case[,] in particular the indictment of September 14, 2022.").)  A motion to

seal an entire criminal case is typically treated as a motion for expungement.  *See United States*

*v. Childs-Beckham*, No. 7:08-CR-00015, 2025 WL 849825, at *3 (W.D. Va. Mar. 13, 2025);

*United States v. Lewandowski*, No. CR DKC 14-0082, 2021 WL 391696, at *1 (D. Md. Feb. 4,

2021); *United States v. Savage*, No. CR DKC 16-0484-34, 2020 WL 7770982, at *2 (D. Md.

Dec. 30, 2020).  As such, the court will first address Drake's broader expungement request

before considering his more specific request to seal the indictment with regard to the charges that

were dismissed.

## A.  Motion for Expungement

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (cleaned up) (internal citations omitted).  "Neither the Constitution nor any federal statute confers upon federal courts the power to expunge a criminal conviction."  *United States v. Mettetal*, 714 Fed. App'x. 230, 233 (4th Cir. 2017).  However, "[t]he doctrine of ancillary jurisdiction [] recognizes that in some circumstances, federal courts have inherent authority to resolve disputes even absent an express statutory grant of jurisdiction."  *Id.* at 233–34.  As the Supreme Court explained in *Kokkonen*, ancillary jurisdiction exists for "two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees."  511 U.S. at 379.  The Fourth Circuit has held that neither of these two purposes supports the exercise of ancillary jurisdiction in cases seeking equitable expungement.  *Mettetal*, 714 Fed. App'x at 235.  Therefore, the court finds that it lacks jurisdiction to consider Drake's motion to the extent that he seeks expungement of his entire criminal case.  *See e.g.*, *United States v. Matthews*, No. 23-6380, 2025 WL 80297, at *1 (4th Cir. Jan. 13, 2025) (affirming district court ruling that it lacked jurisdiction to expunge a since-vacated 1995 firearm conviction because federal ancillary jurisdiction does not extend to motions for equitable expungement).[2]

---

[2]  The court notes that even if it did have ancillary jurisdiction to consider expungement, the circumstances of Drake's case would not warrant such relief.  In *Mettetal*, the Fourth Circuit noted circumstances that might warrant equitable expungement, such as "mass arrests intended to curb the expression of civil rights," including large-scale arrests of antiwar demonstrators or efforts to harass and intimidate black voters.  714 Fed. Appx. at 236 (internal citations omitted).  Drake's case bears no resemblance to those exceptional circumstances.  He pleaded guilty to serious crimes, and the public has a legitimate interest in the transparency of his conviction.

## B.  Motion to Seal

Drake moves the court to seal his indictment, specifically with respect to the thirteen counts that were dismissed.  (Mot. to Seal 1.)  He argues that "[s]everal of the alleged counts contain strong statements and language that can be interpreted by the public in a negative and damaging manor."  (*Id.*)  Drake contends that the allegations related to the dismissed counts are "controversial and can and have caused harm to the defendant[']s reputation and serve as a threat to his physical well[-]being."  (*Id.*)  He further states that he is planning for his release from incarceration and "having damaging allegations that were neither 'proven' nor 'plead to' will undoubtedly cause further harm and represent an unreasonable punishment in addition to the defendant[']s current incarceration."[3]  (*Id.*)  For the reasons set forth below, the court will deny Drake's motion to seal the indictment.

### 1.  Legal standard

Although the district court's authority and discretion to seal judicial records or documents is well established in the Fourth Circuit, the court may do so only "if the public's right of access is outweighed by competing interests."  *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000) (internal citations and quotations omitted).  Because public access advances judicial integrity and serves the public interest, access "may be abrogated only in unusual

---

[3]  Drake also argues that the counts to which he did not plead guilty are violent offenses, whereas the two counts to which he did plead guilty—possession of an unregistered destructive device and stalking—are nonviolent. (Mot. to Seal 2.)  He further contends that the inflammatory statements listed in the indictment relate solely to the dismissed counts and were never proven in court.  The court disagrees.

First, the conduct underlying the possession charge—constructing and placing a pipe bomb in a public area, specifically a merchant tent at the CCB reenactment event—is inherently violent.  Stalking, likewise, is a serious and potentially violent offense, particularly in the context of this case.  The letters Drake sent to various individuals contained threats of extreme violence, including rape and murder.  The court is unable to imagine a scenario in which the specific facts underlying the two counts to which Drake pleaded guilty would not be characterized as violent.

Moreover, as noted above (*see supra* Section II), Drake entered into a plea agreement in which he expressly stipulated to numerous facts, including that he wrote and mailed threatening letters to various individuals, claiming to be Antifa.  (Dkt. No. 46, 3–4.)  Given these admitted facts, sealing portions of the indictment merely because they are controversial or may negatively affect his reputation during incarceration or following his release is unwarranted.

circumstances." *Doe v. Public Citizen*, 749 F.3d 246, 266 (4th Cir. 2014) (citing *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 182 (4th Cir. 1988). The party seeking the sealing of documents bears the burden of overcoming the right of access to the documents. *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004).

There are two sources for the public's right of access to court documents: the common law and the First Amendment. *United States v. Doe*, 962 F.3d 139, 145 (4th Cir. 2020) (citing *Va. Dep't of State Police*, 386 F.3d at 575. "The common law presumes a right to inspect and copy judicial records and documents." *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F2d 178, 180 (4th Cir. 1988) (citing *Nixon v. Warner Commc'ns., Inc.*, 435 U.S. 589, 597 (1978)). "But because a presumption may be overcome, the public's right of access is qualified, not absolute." *Doe*, 962 F.3d at 145 (internal citation omitted). Under the common law, "[t]o overcome that presumption, a court must find that there is a 'significant countervailing interest' in support of sealing that outweighs the public's interest in openness." *Id.* Courts have also noted that the public interest is at its apex when the government is a party to the action. *Pub. Citizen*, 749 F.3d at 271.

"The public's right to access documents under the First Amendment is narrower in scope but stronger in force. It applies only to particular judicial records and documents." *Doe*, 962 F.3d 145. (internal citation and quotations omitted). Where the First Amendment does apply, "a compelling [] interest must justify denial of access, and closure must be 'narrowly tailored to serve that interest.'" *Id.* When considering a motion to seal, a court "must first 'determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake.'" *Id.* at 145–46 (quoting *Va. Dep't of State Police*, 386 F.3d at 576).

**2.  The public's right to access indictments is derived from the First Amendment.**

In determining whether the First Amendment right of access applies to a particular

hearing or document, courts apply the "experience and logic test." *Doe*, 962 F.3d at 146

(internal citation omitted).  The test examines two factors: (1) "whether the document or

proceeding in question was traditionally open to the public," and (2) "whether public access

would curb 'prosecutorial or judicial misconduct' and further 'the public's interest in

understanding the criminal justice system.'" *Id.* (citing *In re Wash. Post*, 807 F.2d 383, 389 (4th

Cir. 1986)).

Applying this test, the Fourth Circuit has recognized a First Amendment right of access

to plea hearings, sentencing hearings, and the documents filed in connection with those

proceedings.  *In re Washington Post Co.*, 807 F.2d at 390.  The Court has also suggested that the

First Amendment right of access may apply to court orders denying sentence reductions.  *See*

*Doe*, 962 F.3d at 146 (assuming without deciding that the First Amendment applied but declining

to "conclusively decide this issue" because defendant's interest did not outweigh the public's

interest under either the common law or the more rigorous First Amendment standard).

However, the Fourth Circuit has found that the common law right of access governs

access to certain documents, including sentencing memoranda.  *United States v. Harris*, 890 F.3d

480, 491–92 (4th Cir. 2018).  Similarly, in *United States v. Appelbaum*, the Court held that 18

U.S.C. § 2703(d) orders do not satisfy the "experience and logic test" and thus are not subject to

the First Amendment right of access.  707 F.3d 283, 291–92 (4th Cir. 2013).  The court reasoned

that § 2703(d) orders, which compel disclosure of private user information from electronic

communication providers, are "ex parte in nature, and occur at the investigative, pre-grand jury,

pre-indictment phase of what may or may not mature into an indictment." *Id.* at 292.  As such,

they "are not amenable to the practices and procedures employed in connection with other judicial proceedings.'" *Id.* at 292 (quoting *In re Sealed Case*, 199 F.3d 522, 526 (D.C. Cir. 2000)).

While this court is unaware of any binding precedent that definitively addresses whether the First Amendment right of access applies to indictments, application of the "experience and logic test" strongly supports that conclusion. Historically, indictments are public documents. Although they may be sealed under limited circumstances—typically upon motion by the Government pursuant to Rule 6(e)(4) of the Federal Rules of Criminal Procedure—such sealing is temporary and limited to specific investigatory and defendant apprehension concerns. *See, e.g.*, *United States v. Ramey*, 791 F.2d 317, 321 (4th Cir. 1986) (holding that district court had discretion to seal indictment in order to protect witnesses cooperating with the Government from endangerment and undue influence); *United States v. Mitchell*, 769 F.2d 1544, 1547 (11th Cir. 1985) (finding that although unjustified in the context of the case, an indictment could be sealed to permit the government to locate additional defendants). The plain language of Rule 6(e)(4) provides that "the indictment [can only] be kept secret until the defendant is in custody or has been released pending trial." Fed. R. Crim. P. 6(e)(4).

Unlike the § 2703(d) orders, indictments are not part of the pre-grand jury investigative process but rather the culmination of it. "By law, an indictment, fair upon its face, returned by a properly constituted grand jury, conclusively determines the existence of probable cause." *Smith v. Munday*, 848 F.3d 248, 255 (4th Cir. 2017) (internal citation and quotations omitted). As such, indictments are "amenable to the practices and procedures employed in connection with other judicial proceedings." *Appelbaum*, 707 F.3d at 292.

Public access to indictments also serves important public interests. It promotes transparency, curbs prosecutorial and judicial misconduct, and enhances understanding of and confidence in the criminal justice system. As the Supreme Court has recognized, "our criminal law tradition insists on public indictment, public trial, and public imposition of sentence. Transparency is essential to maintaining public respect for the criminal justice system, ensuring its integrity, and protecting the rights of the accused." *Smith v. Doe*, 538 U.S. 84, 98–99 (2003). While "publicity may cause adverse consequences for the convicted defendant, running from mild personal embarrassment to social ostracism," such consequences do not outweigh "dissemination of truthful information in furtherance of a legitimate governmental objective." *Id.*

Accordingly, under the "experience and logic test," both the historical tradition of public indictments and the public interest in curbing prosecutorial or judicial misconduct and furthering public understanding of the criminal justice system, support recognizing a First Amendment right of access. Therefore, the court will evaluate Drake's motion to seal his indictment under the more rigorous First Amendment standard.

### 3.  The public has a First Amendment right of access to Drake's indictment.

Under the First Amendment, a district court should grant a motion to seal "only if (1) closure serves a compelling interest; (2) there is a 'substantial probability' that, in the absence of closure, that compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect that compelling interest." *Doe*, 962 F.3d at 146 (citing *In re Wash. Post*, 807 F.2d at 392).

In this case, Drake has failed to identify a compelling interest that would justify sealing his indictment. He broadly asserts that certain allegations—specifically those that were

8

dismissed—are "controversial" and have harmed his reputation.  (Mot. to Seal 1.)  He further

claims that the allegations "serve as a threat to his physical well[-]being."  (*Id.*)  While the

Fourth Circuit has recognized that the interest in "protecting the physical and psychological well-

being of individuals related to the litigation . . . may justify restricting access," such findings

have been found under very different circumstances.  *Doe*, 962 F.3d at 147 (finding a compelling

interest where defendant cooperated with law enforcement); *see also e.g.*, *Harris*, 890 F.3d at

492 (noting that the need to protect the defendant or their family is heightened if the judicial

records suggest the defendant cooperated with law enforcement).  Other situations where courts

have found a compelling interest, such as concerns about jeopardizing ongoing investigations or

safeguarding medical privacy, are not present in Drake's case.  *See e.g.*, *United States v. Doe*,

870 F.3d 991, 998 (9th Cir. 2017) (finding a compelling interest where disclosure would risk

jeopardizing ongoing investigations); *United States v. Maldonado*, No. 1:14-CR-338 (RDA),

2022 WL 7610270, at *6 (E.D. Va. Oct. 13, 2022) (finding a compelling interest in maintaining

privacy of medical records).

Drake has failed to cite any legal authority—nor is the court aware of any—supporting

the notion that a generalized threat to one's physical well-being constitutes a compelling interest

sufficient to override the public's First Amendment right of access.  Similarly, no precedent

supports the idea that an indictment, which may be considered "controversial" or damaging to

the reputation of a convicted felon, can be sealed on such grounds.  Granting Drake's motion to

seal under these circumstances would undermine fundamental principles of transparency and

public access within the criminal justice system.  *See Smith v. Doe*, 538 U.S. at 98–99 ("[O]ur

criminal law tradition insists on public indictment . . . Transparency is essential to maintaining

public respect for the criminal justice system, ensuring its integrity, and protecting the rights of the accused.").

Even if a compelling interest could be established, Drake has not demonstrated a "substantial probability" that sealing the indictment would protect that interest. As noted above, the information Drake seeks to seal is already publicly available through his plea agreement and related documents, including the factual basis for his guilty plea, which largely mirrors the indictment. (*Compare* Dkt. No. 5 (Indictment) with Dkt. No. 46 (Factual Basis for Guilty Plea).) Sealing the indictment would be ineffective in protecting Drake's physical well-being or concealing unfavorable information that he claims only relates to the counts to which he did not plead guilty.[4] Courts in the Fourth Circuit have denied motions to seal where information is already public, and sealing would serve no practical purpose. *See e.g.*, *Savage*, No. CR DKC 16-0484-34, 2020 WL 7770982, at *4 (denying motion to seal indictment in part because the information was already public, making sealing ineffective in protecting the petitioner's identity), *Under Armour, Inc. v. Body Armor Nutrition, LLC*, No. CIV. JKB-12-1283, 2013 WL 5375444, at *9 (D. Md. Aug. 23, 2013) ("There is no compelling governmental interest in protecting information that is already public.") Outside of Drake's court filings, his indictment was widely reported by various news media outlets. As such, any individual with internet access can still discover the charges brought against him in the original indictment, regardless of whether it is sealed by the court. Therefore, sealing the indictment—whether in full or in part—would not achieve Drake's desired outcome.

---

[4] The court disagrees with Drake's characterization. Dismissing thirteen of the fifteen original counts does not change the factual basis he admitted to when pleading guilty to the remaining two counts. Even if the court were to redact those dismissed counts—which it will not—the factual basis would remain unchanged, and the damaging information Drake seeks to seal would still constitute public information protected by the First Amendment.

Given that Drake has failed to satisfy the first two prongs required to justify sealing a document subject to the public's First Amendment right of access, the court need not address the third prong—whether reasonable alternatives to closure exist that would adequately protect the compelling interest.  Accordingly, Drake's motion to seal will be denied.[5]

### III.  CONCLUSION AND ORDER

For the reasons stated above, it is hereby ORDERED that Drake's motion to seal (Dkt. No. 70) is DENIED.  The clerk of court is directed to provide a copy of this memorandum opinion and order to counsel for the United States and to Mr. Drake.

Entered: April 29, 2025.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge

---

[5] Although the court finds the First Amendment right of access applies to an indictment, Drake's motion to seal would also fail under the less protected common law standard.  For many of the same reasons discussed above, Drake has failed to identify a "significant countervailing interest in support of sealing that outweighs the public's interest in openness."  *Doe*, 962 F.3d at 145.  Drake has not cited any case law—nor is the court aware of any legal precedent—supporting the notion that reputational harm, controversial statements, or general threats to an individual's physical well-being would constitute a "significant countervailing interest" that would outweigh the "public's interest in openness."